**Tagged opinion**



**ORDERED in the Southern District of Florida on April 12, 2013.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re                                                    Case No. 12-14490-LMI
                                                         Chapter 7
PAUL G. MOUTTET,

       Debtor.

_____/

TALISMAN CAPITAL ALTERNATIVE
INVESTMENTS FUND, LTD. and EGE, LTD.

       Plaintiff,                        Adv. Proc. No. 12-01842-LMI

vs.

PAUL G. MOUTTET et al.,

       Defendants.

_____/

### <u>ORDER ON MOTIONS TO DISMISS</u>

    This matter came before the Court on October 3, 2012 and February 27, 2013[1] on

motions to dismiss filed by all of the defendants.[2]  The Court has considered the Complaint, the

---

[1] Defendant John Graham was the first defendant to file a motion to dismiss (ECF #42). The Court scheduled and conducted a hearing on Mr. Graham's motion to dismiss on October 3, 2012. After the hearing, multiple other defendants filed motions to dismiss and raised many of the same arguments raised by Mr. Graham. Due to the

motions to dismiss, the responses filed by the Plaintiffs, and the many replies.  The Court has also considered the extensive and well-presented arguments of all counsel. For the reasons outlined below, the Complaint is dismissed, in some instances without prejudice and with leave to amend, and in other instances, with prejudice.[3]

## Introduction

This case, at least as the story has been told to date, is about a soured business relationship between a private funding source (albeit using various financing vehicles) and a group of business people and companies this group created, either separately or together, to create a casino and lottery enterprise in Jamaica.  The basis of this dispute is three of the deals that have left the funding source unsatisfied. Two of the disputes relate to loans, one not repaid, and one not repaid in full.  The third dispute involves the equity piece of a loan, which equity the funding source did not ultimately obtain.  Litigation about these three disputes has already taken place in Jamaica, New York, and Miami.[4]

---

common themes in all the motions to dismiss the Court determined it was necessary and appropriate to rule on all the motions to dismiss at the same time.

[2] Defendant John G. Graham's Motion to Dismiss Complaint (ECF #42); Motion of Defendants Supreme Ventures Limited and Brian George to Dismiss Plaintiff's Complaint (ECF #97); Defendant Paul Hoo's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (ECF #98); Defendant Janette Stewart's Motion to Dismiss; Motion to Dismiss by Defendants Colin A. Mouttet, Robert Vazquez, Jose R, Sevilla, Daisy Montesano, Rafael de la Cruz, Flying Fish Global, LTD., SGC Worldwide LTD., Supreme  Gaming LLC., Nichola Mouttet, Supreme Gaming LTD., Supreme Holdings Management Delaware , LLC., Atlantic Marketing Services Limited, Haven Holdings LTD., Atlantic Marketing Consultants Limited, Ameriservices Company Inc., St. Georges Holdings Limited, Peninsula Global Inc., and Pinnacle International Investments, Inc. (ECF # 105); Gerry Mouttet's Motion to Dismiss Complaint or in the Alternative, Motion for Summary Judgment (ECF #106); Relief Defendants Intralot St. Lucia Limited and Intralot Caribbean Ventures Limited's Motion to Dismiss the Complaint and Incorporated Memorandum of Law (ECF #107); Defendant Ian Levy's Motion to Dismiss Plaintiff's Complaint (ECF #114); Motion to Dismiss by "Relief Defendant" SGLBVI LTD. And VLT (BVI), LTD. (ECF # 189); Relief Defendant Intralot S.A. Integrated Lottery Systems and Services' Motion to Dismiss the Complaint and Incorporated Memorandum of Law (ECF #192); and Defendant Paul Gevain Mouttet's Motion to Dismiss by Joinder in Defendant's Motion to Dismiss [D.E. 105] and Reply in Further Support of Motion to Dismiss [D.E. 169] (ECF #264).

[3] This order constitutes proposed findings of fact and conclusions of law with respect to the Severed Counts (hereafter defined) and a final order with respect to the Core Counts (hereafter defined).

[4] The facts of the dispute in Jamaica and Miami are discussed below. In the New York litigation Talisman sued Atlantic Marketing Services Limited ("Atlantic") for breach of contract.

The Plaintiffs now seek to turn this soured business relationship into conspiracies, criminal enterprises allegedly masterminded by the Debtor – Gerard Mouttet.  However, in 801 paragraphs and 290 pages, the Plaintiffs have failed to successfully plead their case, and this Complaint, at least, must be dismissed.

## Factual Background[5]

In 2002 a group of individuals decided to bring the lottery to Jamaica. Ian Levy ("Levy"), Paul Hoo ("Hoo"), Peter Stewart, Gerry Mouttet ("Mouttet"), and members of the Mouttet family negotiated with Epsilon Global Master Fund L.P. ("Epsilon Global") and Epsilon Global Master Fund II, L.P. ("Epsilon Global II"), two of the assignors of Talisman Capital Alternative Investments Fund, Ltd. ("Talisman"), for a $30 million loan in order for Supreme Ventures Limited ("SVL") to obtain a lottery and gaming license in Jamaica. The loan was structured through a related entity, Atlantic Marketing Services Limited ("Atlantic") - $29.5 million was paid to Atlantic and $500,000 was paid directly to SVL. The Atlantic $29.5 million loan (the "29.5 Million Loan") was secured by a lien on the marketing service fees paid by SVL to Atlantic and was to mature in 2005.  Atlantic was owned by the Debtor and various other persons.  SVL was owned by Levy, Hoo, and Peter Stewart.

At the same time, Epsilon Global Equities Limited n/k/a EGE Ltd. ("EGE") entered into a Forward Share Sale Agreement  (the "FSSA") with SVL, Hoo, Peter Stewart, and Levy. Pursuant to the FSSA, EGE had a future right to purchase up to 17% of the shares in SVL.  EGE never received the SVL stock. In 2007, EGE sued Hoo, Levy, SVL, Janette Stewart (as the administratix of the estate of Peter Stewart) ("Stewart"), and Martyn Veira in a Jamaican court

---

[5] The facts of this case are extensive so this summary seeks only to provide a background for the issues relevant to this decision.  These facts are derived from the Complaint and the various other pleadings this Court has reviewed. It is possible that, due to the structure of the Complaint, and notwithstanding the efforts of the defendants in their responses to clarify some details, that there may be some minor errors of fact but the Court believes all facts material to this ruling have been accurately stated.

alleging that EGE was the owner of SVL stock and the dividends associated with that stock.  The

Jamaican court ruled against EGE, holding that EGE "failed to surrender the Transfer of Shares

documents for registration of its shares or tender the $1 per share on the Acquisition Date as

required by the Agreements" and that by its failure to comply with the FSSA, the agreement was

discharged.  A final judgment was entered (the "Jamaican Judgment").[6]  EGE appealed the

Jamaican Judgment; that appeal is pending.

Between 2003 and 2005, Epsilon Global, Epsilon Global II, and Westford Special

Situations Master Fund L.P.  ("Westford," together with Epsilon Global and Epsilon Global II,

the "Original Lenders") made three additional loans: a $8.415 million dollar loan to SVL in 2003

for SVL to buy out a competitor, a $2.27 million loan to Atlantic in 2004 for SVL to expand into

Central America, and a $3.25 million loan to SVL in 2005 for SVL to buy a video gaming

lounge operator (the "Repaid Loans").

The Complaint alleges that in 2005 certain of the defendants named in the Complaint as

the "Federal RICO Defendants"[7] requested that the $29.5 Million Loan be modified.  The

Complaint alleges the Original Lenders were told the purpose of the modification was to make it

possible for SVL to seek a traditional lending source and pay back the $29.5 Million Loan.  In

connection with that modification, the Original Lenders released their lien on the marketing

service fees, $14,635,628 was paid to the Original Lenders to satisfy the Repaid Loans and the

$500,000 loan to SVL, and the parties executed some kind of modification agreement (the "2005

Modification Agreement").[8] In 2006 SVL stock was sold through an Initial Public Offering

---

[6] It is not clear when the Jamaican Judgment was entered.  The opinion states that the trial took place over several days, the last of which was January 21, 2011.

[7] The Complaint is unclear which of the Federal RICO Defendants made the request – one of the many problems with the Complaint.

[8] Although the Plaintiffs did not attach a copy of this 2005 agreement to the Complaint, counsel for the Plaintiff stated it was called a modification agreement.  Whether or not this agreement is in fact a modification agreement is not important for this decision because the Complaint must be amended, but based on the Plaintiff's arguments

("IPO") through which Hoo, Levy, and Stewart received $7.3 million in proceeds, which proceeds were transferred to the Original Lenders to repay a portion of the $29.5 Million Loan. In 2007, in exchange for the Original Lenders' agreement to further extend the maturity date of the $29.5 Million Loan, the Debtor executed a personal guarantee (the "First Guarantee"). The balance of the $29.5 Million Loan remains unpaid.

Additionally, in 2007, Westford lent Supreme Gaming Corporation Worldwide ("SGCW") $13.6 million to pursue the expansion of a lottery business in Central America (the "$13.6 Million Loan"); this loan was also guaranteed by the Debtor (the "Second Guarantee"). The $13.6 Million Loan was never repaid. The Complaint alleges that, unbeknownst to the Plaintiffs, between 2006 and 2007, SVL and Mouttet sought and obtained $16.5 million in additional financing from Thomas J. Petters, pledging SVL stock as collateral for the loan (the "Petters Loan"). The Complaint alleges the SVL Stock pledged to secure the Petters Loan was supposed to have been used to obtain the traditional bank loan to pay off the balance of the $29.5 Million Loan.

In 2009, the $29.5 Million Loan and the $13.6 Million Loan were assigned to Talisman.[9] Talisman brought an action in the District Court for the Southern District of Florida against the Debtor seeking recovery based on the First Guarantee and the Second Guarantee (collectively the "Mouttet Guarantees"). The Debtor filed this bankruptcy case immediately prior to a scheduled March 12, 2012 trial date. Talisman filed a motion for relief from stay which this Court granted. Subsequently the Debtor agreed to entry of a judgment in District Court on the Mouttet

---

regarding fraud in the inducement based on this 2005 agreement, the amended complaint must clearly describe this agreement and its terms in order to survive another motion to dismiss.
[9] It is the Court's understanding that Talisman, EGE, and each of the Original Lenders are all controlled by the same individual – Steve G. Stevanovich.

Guarantees (the "Guarantee Judgment") stipulating to a $70,073,454 damage award and allowing a claim by Talisman for that amount in the Debtor's bankruptcy.

## Procedural Background

The Plaintiffs filed this 24 count Complaint on August 19, 2012.  The Complaint names 31 defendants,[10] including the Debtor and five Relief Defendants.[11] Six of the 24 counts ask this Court to determine as non-dischargeable all the debts and claims asserted by EGE and Talisman against the Debtor in the Complaint (the "Core Counts").  The balance of the counts seek recovery from a variety of defendants; most of the counts seek relief against defendants other than the Debtor, based primarily on Federal RICO and Florida RICO.  On the same day the Complaint was filed, the Plaintiffs also filed a Motion for Withdrawal of Reference and to Transfer Adversary Proceeding to the U.S. District Court (ECF #2).  In the Motion for Withdrawal of Reference the Plaintiffs stated that this Court does not have subject matter jurisdiction over any claims asserted against any of the defendants other than the Debtor.

On January 2, 2013 the District Court entered its Order on Motion to Withdraw Reference (ECF #199) in which the District Court  agreed that this Court does not have subject matter jurisdiction over the Federal RICO claims. The District Court severed Counts I-XVIII of the Complaint (the "Severed Claims") and withdrew the reference as to the Severed Claims only. The District Court denied the Motion to Withdraw Reference with respect to the Core Claims. Nonetheless, the District Court referred the Severed Counts back to this Court "for proposed findings of fact and conclusions of law as to all case-dispositive motions, as well as for final disposition of all non-dispositive motions…."

---

[10] The Complaint also lists as defendants "Jane and John Does" and "Moe and Joe Entities".  As this Court stated at the February 27 hearing, the Court cannot determine subject matter jurisdiction over unnamed defendants.
[11] The named Relief Defendants are Intralot St. Lucia Limited, Intralot Caribbean Ventures Limited., Intralot S.A., SGLBVI Ltd., and VLT (BVI), Ltd.

Although, with respect to the Severed Counts, this Court proposes the District Court affirm its prior order that this Court does not have subject matter jurisdiction, and that, therefore, Counts I-XVIII must be dismissed without prejudice in order for the Plaintiffs to refile a complaint in the District Court, this Court will nonetheless address the other issues raised by the defendants because (a) the District Court may not accept this Court's proposal regarding subject matter jurisdiction and (b) many of the issues relate to the Core Counts, either directly or indirectly.[12]

## Lack of Subject Matter Jurisdiction

Bankruptcy jurisdiction is set forth in 28 U.S.C. §1334.[13]  Bankruptcy jurisdiction lies in the District Court but the statute specifically provides that all bankruptcy matters may be referred by the District Court to the Bankruptcy Court.  Whether bankruptcy jurisdiction is being exercised by the Bankruptcy Court or the District Court, any civil proceeding filed under the umbrella of section 1334 must either arise in,[14] arise under,[15] or be related to[16] the bankruptcy case.  In order for a civil proceeding to be related to the bankruptcy case, the "outcome of the

---

[12] Because this Court has final adjudicative authority of the Core Counts, but, at best, jurisdiction to treat this ruling only as proposed findings and conclusions of law with respect to the Severed Counts, the parties will need to determine how to bring this ruling to the District Court.  Nonetheless, whether appeal or consideration of proposed findings and conclusions of law, the standard of review on this Order on Motions to Dismiss will be the same – *de novo* – since this Court is only determining issues of law, not issues of fact.

[13]  28 U.S.C. §1334:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

[14] "'Arising in' describes administrative matters unique to the management of a bankruptcy estate." *Continental Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1350 (11th Cir.1999).

[15] "'Arising under' proceedings are matters invoking a substantive right created by the Bankruptcy Code." *In re Toledo* 170 F.3d at 1345 citing *Wood v. Wood (In re Wood )*, 825 F.2d 90, 97 (5th Cir.1987).

[16] The difference between the Bankruptcy Court's jurisdiction and the District Court's jurisdiction of a "related to" proceeding is that the Bankruptcy Court may only enter a final judgment in such a proceeding if the parties consent.

proceeding… [must] conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (whether positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990) citing *Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3d Cir. 1984).  The Eleventh Circuit has recognized that this is an extremely broad grant of jurisdictional authority.  *Winchester Global Trust Co., v. Entrust NPL, Corp. (In re Ryan)*, 276 Fed.Appx. 963, 966 (11th Cir. 2008) citing *Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999).

This Court has previously held that a proceeding is also related to the bankruptcy case when it is appropriate for the Bankruptcy Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367.[17]

In the Southern District of Florida, like every other federal district in the country, all bankruptcy cases have been referred to the Bankruptcy Court and thus, in general, bankruptcy jurisdiction is exercised by the Bankruptcy Court.  Nonetheless, parties may ask that all or part of a bankruptcy case, or an adversary proceeding filed in the bankruptcy case, be adjudicated by the District Court, which request is effectuated by a motion to withdraw the reference.[18]  When the proceeding involves resolution of "other laws of the United States regulating organizations or activities affecting interstate commerce," withdrawal of the reference is mandatory. 28 U.S.C. §157(e). In many instances although a District Court may withdraw the reference with respect to

---

[17] *Century 21 Real Estate, LLC v. Prestige Realty Grp. of Ohio & Florida, LLC (In re Prestige Realty Grp. of Ohio & Florida, LLC)*, 420 B.R. 894, 898–99 (Bankr. S.D. Fla. 2009). The Court recognizes, as noted by Defendants' counsel at the hearing, that there is a debate amongst the courts whether a bankruptcy court may exercise supplemental jurisdiction and that this Court's view is the minority view.
[18] 11 U.S.C. §1334(c)(2).

a civil proceeding related to a bankruptcy case, the District Court, nonetheless sends the proceeding back to bankruptcy court to address all matters up until an actual trial.[19]

Because the District Court held that this Court does not have subject matter jurisdiction over the Federal RICO claims, the defendants argue, this Court has no choice but to dismiss the Severed Counts. The Plaintiffs argue that their statement in the Motion to Withdraw Reference that this Court does not have subject matter jurisdiction was "inartful", and what they really meant was this Court does not have jurisdiction to enter a final judgment on the Severed Counts. Moreover, Plaintiffs argue, this must be what the District Court meant as well, since the District Court referred the entire Complaint, not just the Core Counts, back to this Court.

The inability to render a final judgment on a matter is not the same as lacking subject matter jurisdiction.[20] Nonetheless, it is not this Court's place to interpret the District Court's order to mean something other than what it says. While this Court recognizes that the District Court's decision to "refer" the Severed Counts back to this Court creates some confusion, it will be for the District Court to decide what was the District Court's intention. If this Court lacks subject matter jurisdiction, this Court has no choice but to dismiss the Severed Counts with leave to refile in the District Court at which time the Plaintiffs will need to invoke jurisdiction other than that provided by section 1334.[21]

---

[19] It is unclear why the District Court chose to refer this matter back to this Court. The bulk of the Complaint involves complex RICO allegations against foreign defendants requiring a "significant interpretation" of federal statutes. "Issues which require a "significant interpretation" of federal laws [are those issues] that congress would have intended to have decided by a district judge rather than a bankruptcy judge". *United States v. Johns–Manville Corp. (In re Johns–Manville Corp.,)* 63 B.R. 600, 602 (S.D.N.Y.1986). *See also In re Texaco, Inc.*, 84 B.R. 911, 921 (S.D.N.Y.1988). Nonetheless, all the issues that this Court is addressing with respect to the Federal RICO claims apply to the Core Counts as well and would have had to be addressed by this Court in any event in light of the District Court's decision to sever the claims rather than retain jurisdiction of the entire Complaint.

[20] "Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. See §§ 157(b)(1), (c)(1). That allocation does not implicate questions of subject matter jurisdiction." *Stern v. Marshall (In re Marshall)*, –U.S.–, 131 S.Ct. 2594, 2607 (2011).

[21] Because a court always may determine whether it has subject matter jurisdiction, this Court may dismiss the Severed Counts. However, to the extent that this Court may only make a proposed finding that dismissal of the Severed Counts is warranted based on lack of subject matter jurisdiction, then, that is this Court's proposed finding

However, if, in fact, the District Court "meant" that the only issue it decided was this Court's inability to enter a final judgment on all counts of the Complaint, and intended for this Court to determine whether and to what extent the Severed Counts nonetheless are appropriately filed under section 1334's "related to" jurisdiction, this Court finds that the Severed Counts are neither related-to the bankruptcy case, nor that supplemental jurisdiction is appropriately invoked.

The Plaintiffs concede that related-to jurisdiction rises and falls on the conspiracy and RICO claims.  Based on those counts, the Plaintiffs argue that the resolution of this Complaint will have an impact on the bankruptcy estate such that the Severed Counts are related to the Core Counts, because whatever the Plaintiffs can collect from other defendants, the Plaintiffs will not need to claim from the Debtor or his bankruptcy estate.[22]  The Plaintiffs also rely on the Court's exercise of supplemental jurisdiction pursuant to 28 U.S.C.  §1367, the exercise of which this Court has previously held also triggers related-to jurisdiction under section 1334.  However, it is not possible to determine either aspect of related-to jurisdiction in the absence of an amended complaint, at which time the reviewing court will be able to determine what causes of action survive and whether such actions are sufficient, whether by impact or common nucleus of facts, to trigger related-to jurisdiction.

Accordingly, the Severed Counts should be dismissed for lack of subject matter jurisdiction.

---

on this issue.  Moreover, the Order of Referral only stated that this Court lacks subject matter jurisdiction over the Federal RICO counts; the District Court did not specifically address the Florida RICO counts or the state law claims.

[22] For purposes of related-to jurisdiction, it is only relevant what impact the actions will have on the bankruptcy estate; the impact on the Debtor, positive or negative, is not relevant.

## **Lack of Personal Jurisdiction**[23]

SVL, Brian George, Atlantic, Haven, Atlantic Consultants, AmeriServices, Peninsula, St. Georges, Flying Fish, SGL, SGCW, Ian Levy, John G. Graham, Stewart (collectively the "Foreign Defendants"),  and each of the Relief Defendants argue that the Plaintiffs have failed to adequately allege personal jurisdiction such that any relief can be sought against them in a Florida court.  The Plaintiffs assert personal jurisdiction over the Foreign Defendants on the basis that they are each co-conspirators and part of one or more of the alleged criminal enterprises described in the Complaint.  Because the Complaint fails in its description and allegations of either conspiracy or enterprise, the Plaintiff's reliance on either for purposes of asserting personal jurisdiction fails as well.  This Court has already urged the Plaintiffs, when repleading these claims, to clearly and concisely describe that which is required to meet threshold allegations of personal jurisdiction, such that the reviewing court may better understand the basis upon which personal jurisdiction is asserted and so that each of these defendants may respond appropriately.[24]  Once the Complaint is amended, it will, hopefully, be easier for the reviewing court to determine whether personal jurisdiction has been appropriately alleged with respect to each of the Foreign Defendants.[25]

---

[23]  Several defendants contesting personal jurisdiction have also argued that the Complaint should be dismissed upon the basis of *forum non conveniens*.  If and at such time as Plaintiffs adequately articulate a basis to assert personal jurisdiction over these defendants, the reviewing court can then address the *forum non conveniens* argument.  This Court will only note that the argument appears well founded.  *See infra* n. 32.

[24]  The Plaintiffs argue that not all of the defendants filed affidavits contradicting the assertions of personal jurisdiction made in the Complaint. While counter affidavits are required if jurisdiction is adequately pleaded, in the instant case the Plaintiffs have not met their initial pleading burden and therefore contradicting affidavits are not required. *Delong v. Washington Mills*, 840 F.2d 843, 845 (11th Cir.1988) ("In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant.").  Thus, this Court will not take the time to address whether and to what extent various defendants did nor did not provide adequate rebuttal to the jurisdictional allegations.

[25]  Because this Court finds that dismissal is appropriate because the personal jurisdiction allegations are tied to faulty RICO allegations, the Court will not address the due process and long arm jurisdiction arguments raised by the Foreign Defendants in their various motions to dismiss.

The Plaintiffs argue in their response that they are not required to plead jurisdiction over the Relief Defendants.  While this Court does not agree with that assertion, certainly not in the absolutist manner suggested by the Plaintiffs, this Court finds, as more fully addressed below, the claims against the Relief Defendants should be dismissed with prejudice, and therefore it is not necessary to address the jurisdictional arguments the Plaintiffs have advocated with respect to the Relief Defendants.

Thus, the motions to dismiss that raise lack of personal jurisdiction are granted.[26]

### Lack of Standing

Talisman lacks standing to bring any action arising under Florida RICO, Federal RICO, or the conspiracy claims associated with those actions.  Although the defendants concede that RICO claims can be assigned, the Plaintiffs and the defendants all agree that the assignment of such claims must be specific.  The Complaint does not include any allegations that the RICO claims were assigned by the Original Lenders to Talisman.  Talisman tried to fix this omission in a subsequent affidavit (ECF # 134 Ex. A) filed with its Response, however, pleading infirmities in a complaint cannot be "filled in" by a subsequent affidavit.[27] *Branch v. Tower Air, Inc.*, 1995 WL 649935, at *6 (S.D.N.Y. Nov. 3, 1995) ("[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint….); *In re Adelphia Communications Corp.,* 2007 WL 2403553 (Bankr. S.D.N.Y. 2007).  Accordingly, Counts III, IV, and XII, as well as Counts I and II with respect to Talisman, should be dismissed.

### Res Judicata, Collateral Estoppel and Comity - The Jamaican Judgment

All of the claims relating to EGE's assertion of an ownership right to, or interest in, the SVL stock and the dividends derived therefrom are barred by *res judicata* with respect to Levy,

---

[26] Unless otherwise indicated, this Court's ruling that counts should be dismissed is dismissal with leave to amend.
[27] At the February hearing the Plaintiffs argued that the declaration merely responded to jurisdictional arguments, but lack of standing is fundamental to the Complaint itself.

Stewart, Hoo, and SVL and barred by collateral estoppel with respect to the other parties to the Complaint against whom EGE seeks such relief. This Court finds that the Jamaican Judgment shall be given full comity and recognition and, accordingly, the EGE claims that are part of the Severed Counts are barred and should be dismissed with prejudice.

In *Hilton v. Guyot*, 159 U.S. 113 (1895) ("*Hilton*") the Supreme Court issued what has been described as the seminal decision on comity. The Supreme Court described comity "neither as a matter of absolute obligation, on the one hand, nor of mere courtesy and good will upon the other but it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." 159 U.S. 163, 164.

Thus, to determine whether comity is appropriate, this Court must evaluate:

> (1) whether the foreign court was competent and used proceedings consistent with civilized jurisprudence;
> (2) whether the judgment was rendered by fraud;
> (3) whether the foreign judgment was prejudicial because it violated American public policy notions of what is decent and just; and
> (4) whether to respect the judgment of a foreign tribunal or to defer to parallel foreign proceedings.

*Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004). Other courts have recognized that Jamaican courts use "proceedings consistent with civilized jurisprudence." *See*, *e.g.*, *In re Blackwell*, 270 B.R. 814, 823 (Bankr. W.D. Tex. 2001) ("Jamaica and the Cayman Islands are part of the Commonwealth Caribbean, whose legal systems derive from those of Great Britain," and, "[j]ust as U.S. courts traditionally extend comity to the decisions of Great Britain, the courts traditionally extend the same courtesy to the courts of [the Commonwealth Caribbean]."). Moreover, EGE never argues that the Jamaican Court was incompetent or that its

proceedings were not civilized.  EGE also has not argued that the Jamaican Judgment "violates American public policy notions of what is decent and just."

EGE argues that it could not fully and fairly litigate its rights in the Jamaican courts because an agreement, that the Complaint defines as the "2005 Supplemental Agreement", was excluded from the Jamaican litigation, based on arguments by the defendants challenging its authenticity. Nonetheless, EGE argues, in 2011, Mouttet or George or both signed affidavits that contradict the position taken by the defendants in the Jamaican case.  Thus, EGE argues, the Debtor and various co-conspirators committed fraud on the Jamaican court and the Jamaican Judgment should not be given comity.

However, EGE concedes that the issue of the 2011 affidavits and the alleged fraud on the Jamaican court was not brought before the Jamaican trial court or before the Jamaican appellate court before which the EGE case is currently pending.  Moreover, EGE has not claimed that it could not bring this issue up before the Jamaican court.[28]  Finally, EGE can provide no explanation for how the Jamaican court is not a court of competent jurisdiction to resolve this dispute when EGE is the party who initially sought recourse in the Jamaican courts, under Jamaican law,[29] and, indeed, continues to pursue that action in Jamaica, even during the pendency of this case.  While it is true that this case involves some defendants over whom Jamaican jurisdiction is unclear, since, as this opinion outlines, the Plaintiffs have not, and in certain instances, cannot, articulate a cause of action against these defendants, an inability to

---

[28] EGE cites to *Hilton* for the proposition that it does not need to allege it could not have brought the alleged fraud before the Jamaican court.  However, EGE conceded at argument that in the *Hilton* case, the judgments for which comity was sought had been issued years before the fraud was brought to light. In addition, the parties fighting comity were defendants over whom jurisdiction in the original foreign case was somewhat tenuous, if not altogether suspect, and the judgment was based on law that the Supreme Court held was inconsistent with American notions of justice. That is clearly not the situation in this case; EGE as plaintiff brought the action in Jamaica and is actively litigating this case in the Jamaican courts at this moment.

[29] EGE's counsel acknowledged that it is likely that the FSSA, the subject of the EGE litigation in Jamaica, has Jamaican venue and choice of law provisions.

pursue these defendants in Jamaica (which EGE has only alluded to in any event) is of no import to this decision.

Because the Jamaican Judgment should be given comity, then *res judicata* and collateral estoppel resolve all those claims addressed in or directly dependent on, the allegations resolved by the Jamaican trial court.  All of EGE's claims in the Complaint derive from the interests to which it claimed it was entitled, all of which were litigated before the Jamaican court.

Accordingly Counts V, VI, IX, X, XII, XVI, and XVIII, XIII and XXIV are dismissed with prejudice.

### Extraterritoriality

The Plaintiffs acknowledge that none of Federal RICO, Florida RICO, or Florida state law claims are extraterritorial, but that all apply to the wrongs alleged in this Complaint, notwithstanding that the three disputes that form the core of this Complaint are between foreign lenders, borrowers, guarantors, and principals, involving foreign loans to or interests in,  foreign businesses.  The Plaintiffs claim that the Complaint is filled with descriptions of a variety of acts that occurred in Florida (emails, faxes, and letters, to and from parties in Florida, loan payments to a bank account in Florida, a phone call to the lender's representative in Florida, and at least one board meeting in Florida attended by some of the Defendants).[30] Moreover, EGE and the Original Lenders maintained an office in Boca Raton.[31]  The Plaintiffs argue, correctly, that tortious acts need not actually originate in Florida for Florida to assert an interest over a wrong. *See, e.g., Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So.2d 582 (Fla. 2000).  However, there must then be some nexus between Florida and the harm. The Complaint makes very clear that Talisman is a company organized under the laws of the British Virgin Islands with its

---

[30] The board meeting took place in 2002, all prior to any of the disputes.
[31] The principal of EGE, the Lenders and Talisman, Mr. Stevanovich, had an office in Boca Raton during part of the relevant time period. *See* ECF #134 Ex. A.

principal place of business in Switzerland, that EGE is a British Virgin Islands special purpose vehicle, and emphatically alleges that "at no time relevant to the allegations contained in this Complaint [did any of Talisman, EGE or the Original Lenders] "maintain its principal place of business in Florida (Paragraphs 321 and 322 of the Complaint).[32]

The Plaintiffs cannot rely only on money, faxes, and copies of loan documents passing through Florida to overcome the problems of extraterritoriality. In *Sorota v. Sosa,* 842 F.Supp.2d 1345, 1350–51 (S.D. Fla. 2012) ("*Sorota*") the plaintiff was approached by a family member about starting a telephone company in Peru. The defendant, a third party, gained the plaintiff's trust and offered to manage the plaintiff's investments in Peru in exchange for split profits. During the alleged fraud, the defendant caused the plaintiff to wire money on 18 separate occasions from a Florida bank account to Peru. The defendant, once in control of the money, misappropriated the funds for his own personal use in both Florida and Peru. The *Sorota* court held that "the enterprise operated entirely in Peru, with its only connection to the United States being that the funds it possessed originated from (and possibly returned to) a Florida bank account" and that "[s]uch a limited connection with the United States is insufficient." *Sorota*, 842 F. Supp. 2d at 1352. Thus, even though mail and money went into or through Florida because a principal of the Plaintiffs was located in Florida, this is not enough to trigger application of Federal RICO.

The Plaintiff fares no better with the Florida RICO claims or other Florida causes of action. *Las Vegas Casino Lines, LLC v. Abbot* (*In re Las Vegas Casino Lines, LLC*), 454 B.R.

---

[32] Paragraph 26 of the Complaint states that Talisman is "organized and existing under the laws of the British Virgin Islands; [and] maintains its principal place of business in Vevey, Switzerland." Talisman's predecessors in interest were "each an entity organized and existing under the laws of the Cayman Islands, and each located in Montreaux, Switzerland, where each entity maintains its principal place of business today." Paragraph 322 states that EGE is a "SPV [special purpose vehicle, presumably] organized and existing under the laws of the British Virgin Islands, which maintains its principal place of business in Montreaux, Switzerland."

223, 228-29 (Bankr. M.D. Fla. 2011) (holding that Florida's civil theft statute had no application to acts committed beyond the territory of Florida). The cases relied upon by Plaintiff each include facts that demonstrate a significant relationship between Florida and the harm caused; the Complaint, with all its paragraphs, does not allege a significant relationship between Florida or the United States and any of the harm allegedly suffered by either Plaintiff.[33]

Accordingly, there is no basis upon which any of the Severed Counts, as described, would trigger applicability of any of Federal RICO, Florida RICO or any Florida state law claim and, therefore, the Severed Counts should be dismissed.

## The Relief Defendants

The claims against all the Relief Defendants should be dismissed with prejudice. First, there is no court in the country that has recognized that a private party litigant has the right to include relief defendants in a lawsuit. Second, even if there was such a recognized concept, any cognizable claim against a relief defendant arises only from the claim that such defendant is holding something over which the relief defendant has no legitimate claim.

A relief defendant is a concept that has arisen in case law involving government agencies seeking an extension of claims against wrongdoers to *in rem* relief against wrongfully taken or ill-gotten assets. *See, e.g. Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009); *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). In the Complaint, the Plaintiffs seek to embroil the Relief

---

[33] For example in *In re Le–Nature's Inc*., 2011 WL 2112533, at *2 (W.D. Pa. May 26, 2011), the plaintiffs alleged, and the defendants did not contest, a domestic enterprise. In *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 871 F.Supp.2d 933, 938–40 (N.D. Cal. 2012), another case cited by the Plaintiffs, the court applied the nerve center test, which is designed to determine "the territoriality of an association-in-fact RICO enterprise by examining the alleged 'decisions effectuating the relationships and common interest of [the enterprise's] members, and how those decisions are made." The *Mitsui* court stated that courts applying the nerve center test must look at the structure of the enterprise alleged. In the Complaint, the Plaintiffs do allege that Mouttet is the mastermind of the entire conspiracy, but because the Complaint is tied together by a litany of conclusory allegations and ultimately fails to properly allege a RICO enterprise, the Complaint does not establish enough facts for this Court to apply the *Mitsui* nerve center test. In another case cited by the defendant, *CGC Holding Co., LLC v. Hutchens*, 824 F.Supp.2d 1193, 1209-10 (D. Col. 2011), the defendant was the alleged mastermind of a loan fraud scheme that targeted victims in the United States. The defendant in *Hutchens*, a Canadian citizen, created several Canadian companies to perpetrate the fraud, but all acts involved in the fraud took place in Colorado.

Defendants in litigation to satisfy recovery on claims for which the Plaintiffs have not yet proven they are entitled to relief. In civil litigation there is a structure to collection of judgments. In very limited circumstances, whether against a "relief defendant" or any third party claimant, the law will allow a party to seek injunctive relief, if properly pleaded, properly bonded, and jurisdictionally sound. None of those limited circumstances has been alleged or could be alleged in this case. EGE must first demonstrate it is entitled to the relief it seeks against the primary defendants. Moreover, the claims asserted against the Relief Defendants all relate to the SVL stock to which the Jamaican court has already ruled EGE has no right. Finally, since the Complaint acknowledges that each of the Relief Defendants purchased the SVL stock at issue, there is no scenario in which EGE could successfully assert an interest against these defendants, unless there is some cause of action under Jamaican law with which this Court is not familiar.

There is one instance in which the Plaintiffs describe an actual claim against the Relief Defendants – Counts XVII and XVIII seek imposition of constructive trusts on all of the assets of the Relief Defendants. A constructive trust is a remedy provided by common law for the purpose of recognizing that something held by a party is actually the property of the party seeking the relief. *Provence v. Palm Beach Taverns, Inc.*, 676 So.2d 1022, 1025 (Fla. 4th DCA 1996); *Finkelstein v. Southeast Bank, N.A.*, 490 So.2d 976, 984 (Fla. 4th DCA 1986). In order to establish a constructive trust a plaintiff must show "(1) a promise, express or implied; (2) a transfer of the property and reliance thereon; (3) a confidential relationship; and (4) unjust enrichment." *Bernardele v. Bonorino*, 608 F.Supp.2d 1313, 1328 (S.D. Fla. 2009) (citations omitted).

The Complaint does not state any basis for which either Plaintiff has the right to assert a constructive trust on all of the assets of the Relief Defendants. Constructive trusts are not a

vehicle for protecting a source for payment of a judgment; a constructive trust is not a substitute for demonstrating a plaintiff's entitlement to a prejudgment writ of attachment. *Bender v. Centrust Mortgage Corp.*, 51 F.3d 1027, 1030 (11th Cir.1995) [34] Indeed, a constructive trust is not available to a party whose wrong can be resolved by the payment of money. *Id.*  Thus the Complaint fails to state a cause of action for assertion of a constructive trust against the general assets of the Relief Defendants.

EGE also seeks a constructive trust to be imposed at least on the stock of SVL owned by the Intralot defendants.  First, because the Jamaican Judgment is given comity, collateral estoppel bars this claim as a matter of law.  Moreover, as noted by the Intralot defendants[35] in their motion to dismiss, the Complaint alleges that the Intralot defendants purchased the SVL stock.[36]  Thus, the Intralot defendants purchased SVL stock and no cause of action for constructive trust is pleaded.  Accordingly, Counts XVII and XVIII of the Complaint, as with all the claims against the Relief Defendants, are dismissed with prejudice.[37]

### **Failure to Comply with Rule 8 - "Shotgun" pleading**

Fed. R. Civ. P. 8(a)(2), applicable to this proceeding by virtue of Fed. R. Bankr. P. 7008, "requires that any pleading set forth 'a short and plain statement of the claim showing that the

---

[34] The purpose of a constructive trust is to prevent the unjust enrichment of culpable parties. *Am. Nat'l Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1541 (11th Cir.1983). The beneficiary of the trust is entitled to have his original interest restored in his property which was wrongfully taken. *Id.* The Plaintiffs seek a constructive trust over all of the Relief Defendants' assets, solely on the basis that some of those assets, certain stock, are assets to which EGE claims it is entitled.

[35] Intralot St. Lucia Ltd., Intralot Caribbean Ventures Ltd., and Intralot, S.A.

[36] Plaintiffs allege that Intralot St. Lucia purchased approximately 105,490,000 shares of SVL stock from Hoo in or around October 2008; purchased another 80,000,000 shares of SVL stock from either or both of Hoo and defendant Levy in or around January 2009; and that Intralot Caribbean purchased over 1.3 billion shares of SVL stock from Falcon Global Capital S.A. and Senoda Limited in January 2010.

[37] EGE expressed concern that the Relief Defendants will try to argue that a dismissal with prejudice of the claims raised against them in the Complaint means the Plaintiffs cannot bring any direct claims against the Relief Defendants.  That is not a logical fear but in order to dispel any ambiguity, the Court notes the following – a court cannot rule on matters not before it so, to the extent that EGE can articulate a cognizable cause of action and allege the appropriate grounds to assert personal jurisdiction against defendants, and subject to Fed. R. Bankr. P. 9011, as well as Fed. R. Civ. P. 11, nothing in this opinion precludes EGE from asserting such claims in any amended complaint.

pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *American Dental Ass'n v. Cigna Corp.,* 605 F. 3d 1283 (11th Cir. 2010) (citations omitted). The Complaint is 290 pages long and has 801 numbered paragraphs.  In *Wagner v. First Horizon Pharm. Corp*., 464 F.3d 1273, 1278 (11th Cir. 2006) the Eleventh Circuit described shotgun pleadings as "those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense" and admonished litigants because "'[s]hotgun pleadings wreak havoc on the judicial system.'" (citations omitted). While there are instances in the Complaint when the Plaintiffs incorporate the relevant paragraphs (*see, e.g.*, Count XXII), there are other counts that clearly violate Rule 8 (*see, e.g.*, Count XIV).  Moreover, the way in which the Complaint is laid out, its use of similar defined terms, and its conflation of facts, defendants, and claims in its various factual recitals, makes it virtually impossible to figure out whom is alleged to have done what to whom, when, and where.  Indeed, at the February hearing, Plaintiffs' counsel had to present the Court with a 92 page PowerPoint, including pie charts, in an effort to explain what the Complaint alleges. This is not what Rule 8 requires.  Accordingly those portions of the Complaint that survive must be properly pleaded, in an orderly manner such that one can understand the facts upon which the Plaintiffs rely.

### Failure to Comply with Rules 8, 9 and 12 – the RICO claims

Plaintiff Talisman seeks relief under sections 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d) of the Federal Rico statutes and Fla. Stat. §772.103(3) and Fla. Stat. §772.103(4) of the Florida RICO statutes. Plaintiff  EGE seeks relief under Fla. Stat. §§772.103(3) and 772.103(4) of the Florida RICO statutes.   Count I, II, III, IV, V and VI Complaint must be dismissed because each fails to comply with Fed. R. Civ. P. 8, 9, and 12.

In a pair of cases, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 556 U.S.662 (2009) ("*Iqbal"),* the Supreme Court clarified the pleading standards required by Fed. R. Civ. P. 8 and Fed. R. Civ. P. 12. The Eleventh Circuit, in *American Dental Association v. Cigna Corp.,* 605 F.3d 1283, summarized these holdings and these pleading standards.

> First, the [Supreme Court in *Iqbal]* held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.". . . Second, restating the plausibility standard [outlined in *Twombly]*, the Court held that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" . . . The [Supreme] Court suggested that courts considering motions to dismiss adopt a "two-pronged approach" in applying these principles:  1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*American Dental*, 605 F. 3d at 1290 (citations omitted).

In order to state a claim for relief under Federal RICO section 1962(c) and Fla. Stat. §772.103(3) the plaintiff must allege  (1) conduct,  (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.  *Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 496 (1985).[38]  In order to state a claim for relief under Federal RICO section 1962(d) and Fla. Stat. §772.103(4) the plaintiff must allege 1) that a defendant agreed to the overall objective of the conspiracy; or 2) a defendant agreed to commit two predicate acts. *American Dental*, 605 F. 3d at 1293.

---

[38] The Florida RICO statutes are patterned after the Federal RICO statutes; consequently, the Plaintiffs' pleading failures apply equally to the Federal RICO counts and the Florida RICO counts. *Banderas v. Banco Central del Ecuador*, 461 So.2d 265, 269 (Fla. 3d. DCA 1985) ("The Florida RICO Act, promulgated in 1977, is nearly identical to the Federal RICO statute…. Thus, we can also look to a wealth of material on the Federal RICO statute for guidance on this issue.").

Because the Plaintiffs are basing their RICO claims on mail and wire fraud, the Plaintiffs

must also meet the pleading requirements of Rule 9(b).[39] *American Dental,* 605 F.3d at 1291.

> We have held that pursuant to Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."

*Id.* at 1291 (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81

(11th Cir. 1997)).  Moreover, "[i]n a case involving multiple defendants…the complaint should

inform each defendant of the nature of his alleged participation of the fraud." *Ambrosia Coal &*

*Const. Co. v. Pages Morales*, 482 F.3d 1309, 1217 (11th Cir. 2007) (explaining that the

complaint alleging a RICO claim did not meet the Rule 9(b) particularity standard because it was

devoid of specific allegations with regards to each defendant and that the plaintiffs "lumped

together all of the defendants in their allegations of fraud.")

This Complaint fails when held to these benchmarks.  The Complaint is replete with

conclusory language.  When those conclusory paragraphs are eliminated, the paucity of explicit,

rather than general, detail and the confusing conflation of defendants and actions and the

scattered nature of the time and element sequences is not cured or easier to decipher.

Notwithstanding the difficulty in deciphering, and using the PowerPoint supplied by the

Plaintiffs at the February hearing, this Court finds that as drafted, the Complaint also does not set

forth plausible claims for relief under Federal RICO or Florida RICO.  The Complaint does not

adequately plead pattern, enterprise, or qualifying predicate acts.

First, as preliminarily addressed above, when stripped down to the core, this Complaint is

about three transactions – two loans and one potential equity participation associated with a loan

---

[39] Fed. R. Civ. P. 9 applies to this adversary proceeding by virtue of Bankr. R. Civ. P. 7009. Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

– in which the obligations to the lender have not been fulfilled. The RICO statutes are not

designed as a vehicle to resolve general commercial disputes.  Indeed, this is the reason one of

the requirements of a RICO claim is to demonstrate a pattern of racketeering activity.

> The pattern requirement in §1961(5) thus acts to ensure that RICO's
> extraordinary remedy does not threaten the ordinary run of commercial
> transactions; that treble damage suits are not brought against isolated
> offenders for their harassment and settlement value.

*Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989).  *See also Western Assocs. Ltd*

*P'ship v. Market Square Assocs.,* 235 F.3d 629, 637 (D.C. Cir. 2001) ("The pattern requirement

thus helps to prevent ordinary business disputes from becoming viable RICO claims . . . simply

because the parties used the United States mails or a fax machine to transmit contested financial

documents.")  Moreover, even if a commercial dispute arises from a scheme to defraud a

plaintiff or plaintiffs, breaking up one scheme into several parts does not create a pattern.

*Western Assocs.,* 235 F. 3d at 634 – 635.[40]  After reviewing all the pleadings and the PowerPoint,

and considering the Plaintiff's arguments, there is no question that the Plaintiffs are trying to

allege that the various Defendants were engaged in a variety of schemes that shows pattern,

enterprise and predicate acts, but due to the conflation and confusion this Court has already

described, it is impossible to untangle the knots sufficient to follow any thread to an adequately

pleaded conclusion.

The Complaint also seeks relief under claims for Federal RICO conspiracy and Florida

RICO conspiracy. The Eleventh Circuit has held that "where a plaintiff fails to state a RICO

claim and the conspiracy count does not contain additional allegations, the conspiracy claim

---

[40] The Complaint also does not adequately plead enterprise or appropriate predicate acts.  The infirmities of the Complaint with respect to these elements are laid out in detail in the various responsive pleadings, and it is unnecessary for the Court to repeat them here.  To the extent the Plaintiffs are able to articulate any cognizable RICO claims, all the elements must be plead with more clarity and organization than the manner set forth in the Complaint.

necessarily fails." *Rogers v. Nacchio*, 241 Fed.Appx. 602, 609 (11th Cir.2007) ("*Roger*").[41]  The conspiracy claims do not contain allegations other than those relied upon to support the RICO claims and, accordingly, suffer from the same pleading infirmities as the claims. Consequently, the conspiracy counts cannot survive.

This Complaint also fails to meet the requirements of Rule 9.  While the Plaintiffs argue that they cannot more specifically plead fraud without discovery, it is precisely this kind of argument that *Twombly* and *Iqbal* sought to avoid – a plaintiff cannot file a complaint and then seek discovery to try to make plausible something that is implausible.  This version of the Complaint, with the problems described herein and without the required detail of the fraud, does not meet the minimum pleading standards to survive a motion to dismiss.

Accordingly, the motions to dismiss the Federal RICO and Florida RICO claims and the RICO conspiracy claims are granted.

### **The Florida Law Claims**

In addition to the claims for constructive trust, Florida RICO and Florida RICO conspiracy, each of EGE and Talisman have asserted claims for conversion, civil theft, common law conspiracy, common law fraud, and fraud in the inducement.  To the extent that the Complaint, as amended, contains adequately pleaded allegations to overcome the extraterritoriality issues this Court has already addressed, and, setting aside for purposes of this portion of the Order that the Jamaican Judgment is entitled to comity, nonetheless most of these claims must be dismissed with prejudice, and certain dismissed with an opportunity to amend.

---

[41] The *Roger* decision is unpublished and therefore its precedential value is limited. Nonetheless the Court finds the *Roger* decision logical and helpful, and consistent with rulings in other circuits. *See, e.g.*, *GE Invest. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n. 2 (4th Cir. 2001); *Efron v. Embassy Suites, P.R., Inc.*, 223 F.3d 12, 21 (1st Cir.2000); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3rd Cir. 1993); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n. 8 (9th Cir.1992); *Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1232 (D.C. Cir. 1991); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir.1990); and *In re Edwards*, 872 F.2d 347, 352 (10th Cir.1989).

The basis of Talisman's claim for civil theft is that Atlantic has not repaid the balance of

the $29.5 Million Loan and SGCW has not repaid the $13.6 Million Loan.

> [An] 'Essential element of a conversion is a wrongful deprivation
> of property to the owner.' ....'The gist of a conversion has been
> declared to be not the acquisition of the property of the wrongdoer,
> but the wrongful deprivation of a person of property to the
> possession of which he is entitled. A conversion consists of an act
> in derogation of the plaintiff's possessory rights, and any wrongful
> exercise or assumption of authority over another's goods, depriving
> him of the possession, permanently or for an indefinite time, is a
> conversion.' 53 Am.Jur., p. 822.

*Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 33 So.2d 858, 860 (Fla. 1948). Money

cannot be converted unless the money is a specifically identifiable fund such as an escrow

account, a bag of gold coins, or the like. *Belford Trucking Co. v. Zagar*, 243 So.2d 646 (Fla. 4th

DCA 1970). Fungible money cannot be converted. *Id*. at 648.[42] The Complaint alleges that

Atlantic borrowed money from Epsilon Global and Epsilon Global II and has not repaid in full

that obligation. SGCW borrowed money from Westford and has not paid back that loan. The

failure to repay a loan does not support a claim for conversion.[43] EGE's claim for conversion is

based on the SVL stock and associated dividends, which claim has already been resolved by the

Jamaican courts. Thus Counts VII and Count IX are dismissed with prejudice.

The counts for civil theft also fail to show the Plaintiffs are entitled to the relief they seek.

In Count VIII Talisman alleges that the "Florida Law Defendants" unlawfully took the $29.5

Million Loan monies and the $13.6 Million Loan monies along with the collateral for both. In

Count X EGE alleges that its SVL stock and associated dividends were stolen.

> In order to establish an action for civil theft, the claimant must prove the
> statutory elements of theft, as well as criminal intent. *See* § 772.11, Fla.

---

[42] "To be a proper subject of conversion each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified." *Id*. (citations omitted).

[43] *See Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008) ("It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft.").

> Stat. (1997); *Country Manors Ass'n v. Master Antenna Sys., Inc.*, 534 So.2d
> 1187, 1191 (Fla. 4th DCA 1988). Where the property at issue is also the
> subject of a contract between the parties, a civil theft claim requires
> additional proof of "an intricate sophisticated scheme of deceit and theft."

*Trend Setter Villas of Deer Creek v. Villas on Green*, 569 So.2d 766, 767 (Fla. 4th DCA 1990).

*Also see Florida Desk, Inc. v. Mitchell Int'l, Inc.*, 817 So. 2d 1059 (Fla. 5th DCA 2002). The

Plaintiffs argue that the intricate conspiracies they have detailed in the Complaint sufficiently

allege "an intricate sophisticated scheme of deceit and theft." However, as this Court has already

addressed, the Complaint does not properly or coherently allege the sophisticated scheme.

Perhaps the amended complaint will better satisfy the pleading requirements to sufficiently state

a cause of action for civil theft on behalf of Talisman. Accordingly, the motions to dismiss

Counts VIII and X are granted. Count X is dismissed with prejudice.

The Complaint fails to adequately plead a cause of action for fraud. As this Court has

already discussed, the allegations of fraud and fraud in the inducement lack the specificity

required by Rule 9 and for that reason alone the causes of action will not stand.[44]

The Defendants also argue that fraud in the inducement with respect to the $29.5 Million

Loan should be dismissed because the fraud in the inducement alleged in the Complaint

addresses only the 2005 Modification Agreement, not the initial loan and therefore there was no

inducement.[45] Talisman counters that it is entitled to plead fraud in the inducement because the

2005 Modification Agreement was actually a novation. The Complaint does not allege this, and

---

[44] Because the Complaint fails to meet the requirements of Rule 9 with respect to the allegations of fraud the Court does not need to address the other bases raised for dismissal. This Court notes, however, that the defendants' argument that the claims of fraud are barred by the economic loss rule are no longer valid in light of the recent ruling week by the Florida Supreme Court that the economic lost rule does not apply to actions in which the parties are in privity, but only to product liability cases. *Tiara Condo. Ass'n v. Marsh & Mclennan Co., Inc.*, 2013 WL 828003 (Fla. March 7, 2013)

[45] The elements of an action for fraud in the inducement under Florida law are (1) misrepresentation of a material fact, (2) by someone who knew or should have known of the statement's falsity, (3) with intent that the representation would induce another to rely and act on it, and (4) injury suffered in justifiable reliance on the representation. *Florida Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F.Supp.2d 1239, 1284 (S.D. Fla. 2004).

unless these allegations can be made, Talisman's claim for fraud in the inducement relating to the 2005 Modification Agreement must be dismissed with prejudice.

## Claims against the Debtor

There are six Core Counts in the Complaint – three by Talisman and three by EGE. Talisman seeks a determination that any of the debts owed by the Debtor to Talisman (including the Guarantee Judgment) are non-dischargeable based on 11 U.S.C. §523(a)(2),[46] (a)(4)[47] and (a)(6).[48] All the factual allegations upon which Talisman relies are the same as those set forth in the Complaint relating to the 2005 Modification Agreement , the release of the lien on the service agreement payments, the "secret" Petters Loan, the Mouttet Guarantees, and the $13.6 Million Loan made in 2007.

EGE seeks determination of the non-dischargeability of liability to be determined based on 11 U.S.C. §§523(a)(2), (a)(4) and (a)(6) relying on those allegations of the Complaint relating to the SVL stock and dividends and the 2005 Supplemental Agreement.

The Debtor argues that any claims by Talisman are barred by *res judicata* because Talisman did not raise any of the claims included in the Severed Counts in the District Court Action.  The Debtor argues that any claims raised by EGE are barred by collateral estoppel due

---

[46] 11 U.S.C. §523(a)(2):

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt…for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by… false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition….

[47] 11 U.S.C. §523(a)(4): "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt… for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny…."

[48] 11 U.S.C. §523(a)(6): "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt… for willful and malicious injury by the debtor to another entity or to the property of another entity…."

to the Jamaican Judgment.  The Debtor also argues that the Plaintiffs have also failed to satisfy

pleading requirements for each of the Counts.[49]

## Section 523(a)(2)

In order to prevail in an action under section 523(a)(2) the Plaintiffs must prove by a

preponderance of the evidence[50] that "(1) the debtor made a false representation to deceive the

creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the

creditor sustained a loss as a result of the misrepresentation." *In re Bilzerian*, 153 F.3d 1281

(11th Cir. 1998). If the debtor uses a statement in writing, the plaintiffs needs to prove "(i) that

[the statement] is materially false; (ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or

credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to

deceive."11 U.S.C. §523(a)(2)(B).

The Debtor argues that Talisman is not entitled to relief under section 523(a)(2) as

claimed in Count XIX because its claims are based on misrepresentation of the financial

condition of the Debtor or an insider that is not in writing .  While the Debtor is correct that the

primary focus of Talisman's claim arise from oral misrepresentations, and, thus, is subject to

dismissal, Talisman also alleges the diversion of certain assets and the double pledging of

collateral.  These latter claims are properly pleaded. Accordingly, the Debtor's motion to dismiss

Count XIX is granted in part and denied in part.

The Debtor argues that nothing in the Complaint supports the claims asserted by EGE

under section 523(a)(2) as claimed in Count XXII because the Debtor was not involved in the

contract between EGE and Hoo, Peter Stewart, and Levy,  and that allegations of what did or did

---

[49] The Debtor also argued these claims are barred by the economic loss rule.  That argument is no longer viable. *See supra* n. 44.
[50] *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

not occur with respect to the 2005 Settlement Agreement do not support a claim that Mouttet fraudulently induced EGE to give up any property.  The Debtor is correct that the allegations of the Complaint regarding the initial  FSSA do not support a claim by EGE under section 523(a)(2).  The Debtor was not a party to the original FSSA and the Complaint's allegations that the original FSSA was part of the massive scheme engineered by Mouttet in 2002 to defraud EGE is not plausible.

However, EGE also alleges that Mouttet fraudulently induced EGE to enter into the 2005 Supplemental Agreement, which caused EGE to fail to exercise its options timely under the FSSA.  While, as currently pleaded, the Complaint does not adequately state a cause of action, that claim, if better facts were provided, might support a cause of action under section 523(a)(2). Accordingly, that portion of Count XXII that seeks relief based on the original FSSA is dismissed with prejudice.  That portion of Count XXII that alleges that the Debtor fraudulently induced EGE to enter into the 2005 Supplemental Agreement for the purpose of depriving EGE of its opportunity to timely exercise its option under the FSSA is dismissed with leave to amend, which amendment must also articulate more precisely what debt EGE seeks to have determined is not discharged.[51]

### Section 523(a)(4)

Talisman claims in Count XX that the Debtor caused two entities over which he had control to withhold repayment of money that these two entities had borrowed, that these acts constitute embezzlement or larceny, and, consequently the debt is not dischargeable pursuant to section 523(a)(4). In order to sustain a claim under section 523(a)(4) arising from larceny the

---

[51] While EGE has not liquidated its claim for damages against Mouttet, this Court has previously held that a bankruptcy court has jurisdiction to adjudicate such claims under the "related to" jurisdiction of 28 U.S.C. §1334. *Neves v. Markwood Investments Ltd.*, No. 09–33043–BKC–LMI., 2011 WL 3502770 (Bankr. S.D. Fla. Aug. 8, 2011). That ruling was upheld by the District Court. *Neves v. Markwood Investments Ltd.*, No. 11–24505, 2012 WL 1831717 (S.D.Fla. May 17, 2012).

creditor must prove by a preponderance of the evidence that the debtor fraudulently took the property of another "with the intent to convert such property" without the consent of the owner. *Tobin v. Labidou (In re Labidou), 2009 WL 2912483, \*6 (Bankr. S.D. Fla. 2009)*. The failure to pay back a loan does not generally support a claim for larceny. *See Walter v. Figarola,* 59 So. 3d 188, 190 (Fla. 3d DCA 2011). The allegations of this Complaint do not suggest an exception.[52]

The Complaint does not allege, and Talisman has acknowledged, that there was no fraud when the $29.5 Million Loan was initially made, that the loan was paid down in part, and that any fraud was in the execution of the 2005 Modification Agreement. Thus, as a matter of law, the Complaint fails to state a cause of action for larceny with respect to that portion of the debt associated with the balance owed on the $29.5 Million Loan.

The Complaint also fails to state a cause of action for larceny with respect to the $13.6 Million Loan. The Complaint alleges that the loan to SCGW was made in 2007 but the Complaint relies on bad acts that occurred in 2004 as of the basis for relief. Moreover, while the Complaint alleges that Westford was fraudulently induced to make the loan to SCGW, the claim that Mouttet converted the funds from that loan is inconsistent with the allegations in the Complaint that the proceeds of the loan were used for the purpose for which the loan was made (Complaint, paragraph 139).

Embezzlement, unlike larceny, presupposes that the property stolen was voluntarily turned over by the victim. Embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or unto whose hands it has lawfully

---

[52] The Debtor also argues that this claim is barred by *res judicata* because Talisman sued Mouttet under his guarantees of the SCGW and Atlantic debt and never raised, but could have raised, embezzlement or larceny as alternate grounds for relief. The Court cannot make that determination at this juncture on a motion to dismiss. The Debtor requested that his motion to dismiss be treated as a motion for summary judgment but, in light of the monumental pleading infirmities that any amended complaint must address, this Court declined to treat the motion as a motion for summary judgment.

come." *In re Cuenant*, 339 B.R. 262, 277 (Bankr. M.D. Fla. 2006).  The plaintiff must show that the property was taken for the debtor's benefit "with fraudulent intent or deceit."  *Id.* The allegations relating to the $13.6 Million Loan fail to state a claim for embezzlement since, as already noted, the Complaint acknowledges that the proceeds of the loan were used as required.

The Debtor also argues that Talisman is judicially estopped from raising any claims relating to embezzlement or larceny arising from the $29.5 Million Loan and the $13.6 Million Loan because neither embezzlement nor larceny was raised in the District Court Action. Moreover, the Debtor argues the stipulation that led to the Guarantee Judgment precludes any effort to seek relief arising from the $29.5 Million Loan or the $13.6 Million Loan other than those arising in connection with the Moutttet Guarantees.

> Judicial estoppel is an equitable doctrine invoked at a court's discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001) (internal citations and quotations omitted). Under this doctrine, a party is precluded from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. Judicial estoppel is an equitable concept intended to prevent the perversion of the judicial process." 18 James Wm. Moore et al., Moore's Federal Practice § 134.30, p. 134-62 (3d ed.2000). The purpose of the doctrine, "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749-50, 121 S.Ct. at 1814 (internal citations and quotations omitted). This Circuit has explained that, "[j]udicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *American Nat'l Bank of Jacksonville v. Federal Dep. Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir.1983) (internal citation omitted); *see also, Coastal Plains,* 179 F.3d at 205 (explaining that, "[t]he purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest.")(internal quotations omitted).

*Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir. 2002).  In the Eleventh Circuit "[f]irst, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a

mockery of the judicial system." *Id. (quoting Salomon Smith Barney, Inc. v. Harvey, M.D.,* 260 F.3d 1302, 1308 (11th Cir.2001)).[53]

In this case there is nothing on the face of the Complaint that indicates that Talisman took any position under oath, either in Bankruptcy Court or in the District Court that contradicts its claims for embezzlement and the dischargeability of that claim, thus, under the rules established by the Eleventh Circuit judicial estoppel does not preclude Talisman's 523(a)(4) embezzlement claim.

Talisman argues in its response that with respect to Count XX, it is also relying on allegations of conversion and theft of collateral. All of these claims are tied up in the RICO and conspiracy counts that this Court has already directed must be dismissed.

Accordingly, Count XX is dismissed with prejudice as to any claims arising from the alleged theft of loan proceeds or embezzlement with respect to the $13.6 Million Loan and dismissed without prejudice with respect to embezzlement relating to the $29.5 Million Loan, and any claims relating to theft of collateral.

EGE rests its section 523(a)(4) claim in Count XXIII on the SVL stock claim. The Complaint alleges that "Mouttet has illegally converted the stock, cash proceeds of the dividends, and other valuable personal property of EGE." A court of competent jurisdiction has already determined that EGE did not have an ownership interest in the stock or the cash proceeds of the dividends. There is nothing in the Complaint that identifies what constitutes "other valuable personal property." As Mouttet cannot be held responsible for converting something that EGE did not own, Count XXIII is dismissed with prejudice.

---

[53] The Eleventh Circuit recognized that the United States Supreme Court had recently described various factors to consider when determining whether judicial estoppel has been appropriately invoked, and held that the Eleventh Circuit requirements were consistent with the Supreme Court's instructions. *Id.*

**Section 523(a)(6)**

Finally, each of Talisman and EGE assert that their respective claims against the Debtor are not dischargeable by virtue of 11 U.S.C. §523(a)(6).  In order to sustain a claim under section 523(a)(6) the Plaintiffs must allege and prove that the Debtor acted "with the actual intent to cause injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

In Count XIX Talisman alleges that the Debtor's liability under the Second Guarantee is not dischargeable because the Debtor stole the proceeds of the $13.6 Million Loan.[54]  The Debtor argues that Talisman is judicially estopped from claiming that Mouttet is liable to it for the $13.6 million because it sued Mouttet on the Second Guarantee and did not seek recovery under any other theory of law.  For the reasons this Court has already addressed, the Court cannot rule on this motion to dismiss that Talisman is judicially estopped from raising this claim by virtue of the Guarantee Judgment.  Nonetheless Count XXI is dismissed with prejudice because, as noted already, the Complaint alleges the $13.6 Million Loan proceeds were used for the purposes for which the money was lent, and accordingly, Talisman's claim fails to state a cause of action for willful and malicious injury.

EGE's claim in Count XX seeking a determination under 523(a)(6) is equally doomed.  The Debtor argues that EGE may not bring an action under section 523(a)(6) because a court of competent jurisdiction has already held that the property that Mouttet is accused of stealing was not EGE's property.  This Court agrees.  Accordingly, Count XXIV is dismissed with prejudice.

**CONCLUSION[55]**

---

[54] The Complaint also alleges that the Debtor stole the service fees but nowhere in the Complaint is it alleged that the service fees secured repayment of the $13.6 Million Loan.

[55] As requested by the parties and in order to assist the District Court in its review, this Court has articulated several grounds for its rulings, recognizing there are several alternative grounds pursuant to which many of the Counts are dismissed.

In sum, this Court proposes that the District Court dismiss the Severed Counts with prejudice with leave for the Plaintiffs to file a complaint in the District Court invoking its jurisdiction on some basis other than 28 U.S.C. §1334.  The balance of the Complaint – the Core Counts, are dismissed, some with leave to amend, others with prejudice as detailed herein.

Should the District Court hold that the Severed Counts are properly brought pursuant to section 1334, then this Court proposes nonetheless that those Counts be dismissed either with or without prejudice, for the reasons outlined herein.

# # #

Copies furnished to:
Roy Hartman, Esq.

*Attorney Hartman is directed to mail a copy of this Order to all interested parties and to file a certificate of service with the Clerk of the Bankruptcy Court.*